STEFANI E. SHANBERG (State Bar No. 206717)
RYAN R. SMITH (State Bar No. 229323)
ROBIN L. BREWER (State Bar No. 253686)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-Mail:    sshanberg@wsgr.com
           rsmith@wsgr.com
           rbrewer@wsgr.com

Attorneys for Plaintiff
CHECK POINT SOFTWARE TECHNOLOGIES INC.

ORIGINAL FILED

JUN 21 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DMR

### SAN FRANCISCO DIVISION

CV 12 3231

| | |
|---|---|
| CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware corporation, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | **JURY TRIAL DEMANDED** |
| SRI INTERNATIONAL, INC., a California corporation, | |
| Defendant. | |

Check Point Software Technologies Inc. hereby alleges for its complaint against defendant SRI International, Inc. on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

### THE PARTIES

1.    Plaintiff Check Point Software Technologies Inc. ("Check Point") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 800 Bridge Parkway, Redwood City, California 94065.  Check Point is a worldwide leader in

/ / /

1  securing the Internet and provides customers with uncompromised protection against all types of

2  threats.  Check Point first pioneered the industry with FireWall-1 and its patented technology.

3      2.     Defendant SRI International, Inc. ("SRI") is an independent research institute

4  incorporated under the laws of California, and has a regular and established place of business at

5  333 Ravenswood Avenue, Menlo Park, California 94025.

6  **INTRADISTRICT ASSIGNMENT**

7      3.     Pursuant to Civil Local Rule 3-2(c), this is an Intellectual Property Action to be

8  assigned on a district-wide basis.

9  **BACKGROUND**

10      4.     United States Patent No. 6,321,338 ("the '338 patent"), entitled Network

11  Surveillance, states on its face that it is assigned to SRI.  The '338 patent states that it issued on

12  November 20, 2001.  A true and correct copy of the '338 patent is attached hereto as Exhibit A.

13      5.     United States Patent No. 6,484,203 ("the '203 patent"), entitled Hierarchical

14  Event Monitoring and Analysis, states on its face that it is assigned to SRI.  The '203 patent

15  states that it issued on November 19, 2002.  A true and correct copy of the '203 patent is

16  attached hereto as Exhibit B.

17      6.     United States Patent No. 6,704,874 ("the '874 patent"), entitled Network-Based

18  Alert Management, states on its face that it is assigned to SRI.  The '874 patent states that it

19  issued on March 9, 2004.  A true and correct copy of the '874 patent is attached hereto as

20  Exhibit C.

21      7.     United States Patent No. 6,711,615 ("the '615 patent"), entitled Network

22  Surveillance, states on its face that it is assigned to SRI.  The '615 patent states that it issued on

23  March 23, 2004.  A true and correct copy of the '615 patent is attached hereto as Exhibit D.

24      8.     United States Patent No. 7,594,260 ("the '260 patent"), entitled Network

25  Surveillance Using Long-Term and Short-Term Statistical Profiles to Determine Suspicious

26  Network Activity, states on its face that it is assigned to SRI.  The '260 patent states that it issued

27  on September 22, 2009.  A true and correct copy of the '260 patent is attached hereto as

28  Exhibit E.

1       9.      United States Patent No. 7,694,115 ("the '115 patent"), entitled Network-Based

2    Alert Management System, states on its face that it is assigned to SRI.  The '115 patent states

3    that it issued on April 6, 2010.  A true and correct copy of the '115 patent is attached hereto as

4    Exhibit F.  Collectively, the patents attached hereto as Exhibits A-F are the "asserted patents."

5       10.     In August of 2004, SRI filed a lawsuit against both Internet Security Systems, Inc.

6    and Symantec Corporation in the United States District Court for the District of Delaware

7    alleging infringement of, *inter alia*, the '338 patent, the '203 patent, and the '615 patent.  That

8    lawsuit continued until late 2011.  In February 2011, SRI filed a second lawsuit, also in

9    Delaware, alleging that Symantec infringed the '203 patent and the '615 patent.  The parties to

10   that second lawsuit stipulated to dismissal on April 27, 2012.  SRI has, therefore, been engaged

11   in a persistent pattern of litigation involving at least the '338 patent, the '203 patent, and the '615

12   patent for nearly eight years.

13      11.     On May 9, 2012—less than two weeks after concluding nearly eight years of

14   persistent litigation—SRI's Vice President of Legal and Business Affairs and General Counsel,

15   Richard H. Abramson, wrote to Ms. Tal Payne, Check Point's Chief Financial Officer, seeking to

16   "initiate a discussion … regarding a license to this portfolio," and listing each of the asserted

17   patents as patents "applicable to Check Point's business."  Mr. Abramson touted "SRI's patent

18   position" and "earlier enforcement efforts" which include years of litigation.  Mr. Abramson

19   specifically said SRI believes these patents to be "highly relevant" to "Check Point security

20   appliances with IPS; Check Point IPS software blade; and SmartEvent software blade."  And Mr.

21   Abramson copied SRI's litigation counsel, the same litigation counsel that represented SRI in its

22   prior enforcement campaign, on the letter.  In other words, SRI alleged that numerous Check

23   Point products infringe the asserted patents.

24      12.     On or around June 21, 2012, SRI's letter came to the attention of Check Point's

25   General Counsel, John Slavitt.  Mr. Slavitt called Mr. Abramson and told him Check Point does

26   not believe it requires a license to the asserted patents.  Mr. Slavitt concluded from the

27   conversation that SRI intends to sue Check Point.  In light of SRI's persistent pattern of

28   / / /

1   litigation, Check Point is concerned that it is one of SRI's immediate litigation targets. Check

2   Point believes SRI will not hesitate to file suit immediately.

3                                       **FIRST CAUSE OF ACTION**
                          **(Declaratory Judgment of Invalidity of U.S. Patent No. 6,321,338)**

4

5           13.     Check Point repeats and realleges each and every allegation set forth in

6   paragraphs 1 through 12, inclusive, and incorporates them by reference herein.

7           14.     Because SRI contends that Check Point needs to license the SRI patents, it

8   follows that SRI believes its '338 patent is valid and infringed by Check Point. As a result of the

9   totality of the circumstances between the parties discussed above, Check Point believes that SRI

10  intends to sue Check Point for infringement of the '338 patent.

11          15.     Check Point contends that the '338 patent is invalid because it fails to satisfy the

12  conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103,

13  and/or 112 of Title 35 of the United States Code. For example, the '338 patent is anticipated

14  and/or rendered obvious in light of a paper entitled "Live Traffic Analysis of TCP/IP Gateways"

15  ("Live Traffic") and/or "EMERALD: Event Monitoring Enabling Responses To Anomalous

16  Live Disturbances" ("EMERALD 1997").

17          16.     On at least the basis that it believes the '338 patent is invalid, Check Point does

18  not need a license to the '338 patent, and it has a right to continue providing its security products

19  and services without a license to or interference from SRI's '338 patent.

20          17.     Accordingly, an actual, valid, and justiciable controversy has arisen and exists

21  between Check Point and SRI.   Check Point desires a prompt and definitive judicial

22  determination and declaration that the '338 patent is invalid.   Such a determination and

23  declaration are necessary and appropriate at this time in order that the parties may ascertain their

24  respective rights and duties.

25                                     **SECOND CAUSE OF ACTION**
                       **(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,321,338)**

26

27          18.     Check Point repeats and realleges each and every allegation set forth above in

28  paragraphs 1 through 17, inclusive, and incorporates them by reference herein.

COMPLAINT – DECLARATORY JUDGMENT          - 4 -

19.     Because SRI contends that Check Point needs to license the '338 patent, it follows that SRI believes its '338 patent is valid and infringed by Check Point.  As a result of the totality of the circumstances between the parties discussed above, Check Point believes that SRI intends to sue Check Point for infringement of the '338 patent.

20.     Check Point contends that its products and services do not infringe, contribute to the infringement of, or induce others to infringe any valid and enforceable claim of the '338 patent, either directly or indirectly, either literally or under the doctrine of equivalents. Accordingly, Check Point does not need a license to the '338 patent, and it has a right to continue to providing its security services without a license to or interference from SRI's '338 patent.

21.     Accordingly, an actual, valid, and justiciable controversy has arisen and exists between Check Point and SRI.   Check Point desires a prompt and definitive judicial determination and declaration that its products do not infringe any valid claim of the '338 patent. Such a determination and declaration are necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment of Invalidity of U.S. Patent No. 6,484,203)**

22.     Check Point repeats and realleges each and every allegation set forth in paragraphs 1 through 21, inclusive, and incorporates them by reference herein.

23.     Because SRI contends that Check Point needs to license the SRI patents, it follows that SRI believes its '203 patent is valid and infringed by Check Point.  As a result of the totality of the circumstances between the parties discussed above, Check Point believes that SRI intends to sue Check Point for infringement of the '203 patent.

24.     Check Point contends that the '203 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.  For example, the '203 patent is anticipated and/or rendered obvious in light of Live Traffic, EMERALD 1997, and U.S. Patent No. 5,768,501 ("Lewis"), and the ISS RealSecure and NetRanger products.

1     25.    On at least the basis that it believes the '203 patent is invalid, Check Point does

2    not need a license to the '203 patent, and it has a right to continue providing its security products

3    and services without a license to or interference from SRI's '203 patent.

4     26.    Accordingly, an actual, valid, and justiciable controversy has arisen and exists

5    between Check Point and SRI.  Check Point desires a prompt and definitive judicial

6    determination and declaration that the '203 patent is invalid.  Such a determination and

7    declaration are necessary and appropriate at this time in order that the parties may ascertain their

8    respective rights and duties.

9

**FOURTH CAUSE OF ACTION**

10    **(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,484,203)**

11     27.    Check Point repeats and realleges each and every allegation set forth above in

12    paragraphs 1 through 26, inclusive, and incorporates them by reference herein.

13     28.    Because SRI contends that Check Point needs to license the '203 patent, it follows

14    that SRI believes its '203 patent is valid and infringed by Check Point.  As a result of the totality

15    of the circumstances between the parties discussed above, Check Point believes that SRI intends

16    to sue Check Point for infringement of the '203 patent.

17     29.    Check Point contends that its products and services do not infringe, contribute to

18    the infringement of, or induce others to infringe any valid and enforceable claim of the '203

19    patent, either directly or indirectly, either literally or under the doctrine of equivalents.

20    Accordingly, Check Point does not need a license to the '203 patent, and it has a right to

21    continue to providing its security services without a license to or interference from SRI's '203

22    patent.

23     30.    Accordingly, an actual, valid, and justiciable controversy has arisen and exists

24    between Check Point and SRI.  Check Point desires a prompt and definitive judicial

25    determination and declaration that its products do not infringe any valid claim of the '203 patent.

26    Such a determination and declaration are necessary and appropriate at this time in order that the

27    parties may ascertain their respective rights and duties.

28    / / /

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment of Invalidity of U.S. Patent No. 6,704,874)**

31. Check Point repeats and realleges each and every allegation set forth in paragraphs 1 through 30, inclusive, and incorporates them by reference herein.

32. Because SRI contends that Check Point needs to license the SRI patents, it follows that SRI believes its '874 patent is valid and infringed by Check Point. As a result of the totality of the circumstances between the parties discussed above, Check Point believes that SRI intends to sue Check Point for infringement of the '874 patent.

33. Check Point contends that the '874 patent is invalid because it fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code. For example, the '874 patent is anticipated and/or rendered obvious in light of Live Traffic, EMERALD 1997, Lewis, and the ISS RealSecure and NetRanger products.

34. On at least the basis that it believes the '874 patent is invalid, Check Point does not need a license to the '874 patent, and it has a right to continue providing its security products and services without a license to or interference from SRI's '874 patent.

35. Accordingly, an actual, valid, and justiciable controversy has arisen and exists between Check Point and SRI. Check Point desires a prompt and definitive judicial determination and declaration that the '874 patent is invalid. Such a determination and declaration are necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,704,874)**

36. Check Point repeats and realleges each and every allegation set forth above in paragraphs 1 through 35, inclusive, and incorporates them by reference herein.

37. Because SRI contends that Check Point needs to license the '874 patent, it follows that SRI believes its '874 patent is valid and infringed by Check Point. As a result of the totality

/ / /

1  of the circumstances between the parties discussed above, Check Point believes that SRI intends

2  to sue Check Point for infringement of the '874 patent.

3       38.   Check Point contends that its products and services do not infringe, contribute to

4  the infringement of, or induce others to infringe any valid and enforceable claim of the '874

5  patent, either directly or indirectly, either literally or under the doctrine of equivalents.

6  Accordingly, Check Point does not need a license to the '874 patent, and it has a right to

7  continue to providing its security services without a license to or interference from SRI's '874

8  patent.

9       39.   Accordingly, an actual, valid, and justiciable controversy has arisen and exists

10 between Check Point and SRI.   Check Point desires a prompt and definitive judicial

11 determination and declaration that its products do not infringe any valid claim of the '874 patent.

12 Such a determination and declaration are necessary and appropriate at this time in order that the

13 parties may ascertain their respective rights and duties.

14

15                    **SEVENTH CAUSE OF ACTION**
   **(Declaratory Judgment of Invalidity of U.S. Patent No. 6,711,615)**

16       40.   Check Point repeats and realleges each and every allegation set forth in

17 paragraphs 1 through 39, inclusive, and incorporates them by reference herein.

18       41.   Because SRI contends that Check Point needs to license the SRI patents, it

19 follows that SRI believes its '615 patent is valid and infringed by Check Point.  As a result of the

20 totality of the circumstances between the parties discussed above, Check Point believes that SRI

21 intends to sue Check Point for infringement of the '615 patent.

22       42.   Check Point contends that the '615 patent is invalid because it fails to satisfy the

23 conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103,

24 and/or 112 of Title 35 of the United States Code.  For example, the '615 patent is anticipated

25 and/or rendered obvious in light of Live Traffic, EMERALD 1997, Lewis, and the ISS

26 RealSecure and NetRanger products.

27 / / /

28 / / /

COMPLAINT – DECLARATORY JUDGMENT       - 8 -

43.     On at least the basis that it believes the '615 patent is invalid, Check Point does not need a license to the '615 patent, and it has a right to continue providing its security products and services without a license to or interference from SRI's '615 patent.

44.     Accordingly, an actual, valid, and justiciable controversy has arisen and exists between Check Point and SRI.   Check Point desires a prompt and definitive judicial determination and declaration that the '615 patent is invalid.   Such a determination and declaration are necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment of Noninfringement of U.S. Patent No. 6,711,615)

45.     Check Point repeats and realleges each and every allegation set forth above in paragraphs 1 through 44, inclusive, and incorporates them by reference herein.

46.     Because SRI contends that Check Point needs to license the '615 patent, it follows that SRI believes its '615 patent is valid and infringed by Check Point.   As a result of the totality of the circumstances between the parties discussed above, Check Point believes that SRI intends to sue Check Point for infringement of the '615 patent.

47.     Check Point contends that its products and services do not infringe, contribute to the infringement of, or induce others to infringe any valid and enforceable claim of the '615 patent, either directly or indirectly, either literally or under the doctrine of equivalents. Accordingly, Check Point does not need a license to the '615 patent, and it has a right to continue to providing its security services without a license to or interference from SRI's '615 patent.

48.     Accordingly, an actual, valid, and justiciable controversy has arisen and exists between Check Point and SRI.   Check Point desires a prompt and definitive judicial determination and declaration that its products do not infringe any valid claim of the '615 patent. Such a determination and declaration are necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

/ / /

COMPLAINT – DECLARATORY JUDGMENT          - 9 -

1

2

**NINTH CAUSE OF ACTION**
**(Declaratory Judgment of Invalidity of U.S. Patent No. 7,594,260)**

3      49.    Check Point repeats and realleges each and every allegation set forth in

4  paragraphs 1 through 48, inclusive, and incorporates them by reference herein.

5      50.    Because SRI contends that Check Point needs to license the SRI patents, it

6  follows that SRI believes its '260 patent is valid and infringed by Check Point.  As a result of the

7  totality of the circumstances between the parties discussed above, Check Point believes that SRI

8  intends to sue Check Point for infringement of the '260 patent.

9      51.    Check Point contends that the '260 patent is invalid because it fails to satisfy the

10  conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103,

11  and/or 112 of Title 35 of the United States Code.  For example, the '260 patent is anticipated

12  and/or rendered obvious in light of Live Traffic, EMERALD 1997, Lewis, and the ISS

13  RealSecure and NetRanger products.

14      52.    On at least the basis that it believes the '260 patent is invalid, Check Point does

15  not need a license to the '260 patent, and it has a right to continue providing its security products

16  and services without a license to or interference from SRI's '260 patent.

17      53.    Accordingly, an actual, valid, and justiciable controversy has arisen and exists

18  between Check Point and SRI.   Check Point desires a prompt and definitive judicial

19  determination and declaration that the '260 patent is invalid.   Such a determination and

20  declaration are necessary and appropriate at this time in order that the parties may ascertain their

21  respective rights and duties.

22

23

**TENTH CAUSE OF ACTION**
**(Declaratory Judgment of Noninfringement of U.S. Patent No. 7,594,260)**

24      54.    Check Point repeats and realleges each and every allegation set forth above in

25  paragraphs 1 through 53, inclusive, and incorporates them by reference herein.

26      55.    Because SRI contends that Check Point needs to license the '260 patent, it follows

27  that SRI believes its '260 patent is valid and infringed by Check Point.  As a result of the totality

28  / / /

1  of the circumstances between the parties discussed above, Check Point believes that SRI intends

2  to sue Check Point for infringement of the '260 patent.

3      56.     Check Point contends that its products and services do not infringe, contribute to

4  the infringement of, or induce others to infringe any valid and enforceable claim of the '260

5  patent, either directly or indirectly, either literally or under the doctrine of equivalents.

6  Accordingly, Check Point does not need a license to the '260 patent, and it has a right to

7  continue to providing its security services without a license to or interference from SRI's '260

8  patent.

9      57.     Accordingly, an actual, valid, and justiciable controversy has arisen and exists

10  between Check Point and SRI.   Check Point desires a prompt and definitive judicial

11  determination and declaration that its products do not infringe any valid claim of the '260 patent.

12  Such a determination and declaration are necessary and appropriate at this time in order that the

13  parties may ascertain their respective rights and duties.

14

15  **ELEVENTH CAUSE OF ACTION**
**(Declaratory Judgment of Invalidity of U.S. Patent No. 7,694,115**

16      58.     Check Point repeats and realleges each and every allegation set forth in

17  paragraphs 1 through 57, inclusive, and incorporates them by reference herein.

18      59.     Because SRI contends that Check Point needs to license the SRI patents, it

19  follows that SRI believes its '115 patent is valid and infringed by Check Point.  As a result of the

20  totality of the circumstances between the parties discussed above, Check Point believes that SRI

21  intends to sue Check Point for infringement of the '115 patent.

22      60.     Check Point contends that the '115 patent is invalid because it fails to satisfy the

23  conditions and requirements for patentability as set forth, *inter alia*, in Sections 101, 102, 103,

24  and/or 112 of Title 35 of the United States Code.  For example, the '115 patent is anticipated

25  and/or rendered obvious in light of Live Traffic, EMERALD 1997, Lewis, and the ISS

26  RealSecure and NetRanger products.

27  / / /

28  / / /

1    61.    On at least the basis that it believes the '115 patent is invalid, Check Point does

2 not need a license to the '115 patent, and it has a right to continue providing its security products

3 and services without a license to or interference from SRI's '115 patent.

4    62.    Accordingly, an actual, valid, and justiciable controversy has arisen and exists

5 between Check Point and SRI.   Check Point desires a prompt and definitive judicial

6 determination and declaration that the '115 patent is invalid.   Such a determination and

7 declaration are necessary and appropriate at this time in order that the parties may ascertain their

8 respective rights and duties.

9

10

**TWELFTH CAUSE OF ACTION**
**(Declaratory Judgment of Noninfringement of U.S. Patent No. 7,694,115)**

11    63.    Check Point repeats and realleges each and every allegation set forth above in

12 paragraphs 1 through 62, inclusive, and incorporates them by reference herein.

13    64.    Because SRI contends that Check Point needs to license the '115 patent, it follows

14 that SRI believes its '115 patent is valid and infringed by Check Point.   As a result of the totality

15 of the circumstances between the parties discussed above, Check Point believes that SRI intends

16 to sue Check Point for infringement of the '115 patent.

17    65.    Check Point contends that its products and services do not infringe, contribute to

18 the infringement of, or induce others to infringe any valid and enforceable claim of the '115

19 patent, either directly or indirectly, either literally or under the doctrine of equivalents.

20 Accordingly, Check Point does not need a license to the '115 patent, and it has a right to

21 continue to providing its security services without a license to or interference from SRI's '115

22 patent.

23    66.    Accordingly, an actual, valid, and justiciable controversy has arisen and exists

24 between Check Point and SRI.   Check Point desires a prompt and definitive judicial

25 determination and declaration that its products do not infringe any valid claim of the '115 patent.

26 Such a determination and declaration are necessary and appropriate at this time in order that the

27 parties may ascertain their respective rights and duties.

28 / / /

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Check Point requests entry of judgment in its favor and against defendant SRI as follows:

(a)   Declaring that the claims of the '338 patent, the '203 patent, the '874 patent, the '615 patent, the '260 patent, and the '115 patent are invalid;

(b)   Declaring that Check Point has not infringed, induced others to infringe, or contributed to the infringement of any valid claim of the '338 patent, the '203 patent, the '874 patent, the '615 patent, the '260 patent, or the '115 patent, either directly or indirectly, either literally or under the doctrine of equivalents;

(c)   Enjoining SRI, its officers, owners, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from making any claims that Check Point infringes the '338 patent, the '203 patent, the '874 patent, the '615 patent, the '260 patent, or the '115 patent;

(d)   Enjoining SRI, its officers, owners, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from enforcing the '338 patent, the '203 patent, the '874 patent, the '615 patent, the '260 patent, or the '115 patent against Check Point's products and services;

(e)   Awarding Check Point its costs of suit, including reasonable attorneys' fees; and

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

COMPLAINT – DECLARATORY JUDGMENT        - 13 -

1      (f)   Granting such other and further relief as the Court may deem just and

2           proper.

3 Dated: June 21, 2012                WILSON SONSINI GOODRICH & ROSATI
                                      Professional Corporation

4

5

6                               By:_____
                                      Stefani E. Shanberg

7

8                               Attorneys for Plaintiff
                              CHECK POINT SOFTWARE
TECHNOLOGIES INC.

9

10

11                      **DEMAND FOR JURY TRIAL**

12      Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6(a), Check Point

13 hereby demands a jury trial of all issues triable by a jury.

14

15 Dated: June 21, 2012                WILSON SONSINI GOODRICH & ROSATI
                                        Professional Corporation

16

17                               By:_____
                                      Stefani E. Shanberg

18

19

20                               Attorneys for Plaintiff
                              CHECK POINT SOFTWARE
TECHNOLOGIES INC.

21

22

23

24

25

26

27

28

COMPLAINT – DECLARATORY JUDGMENT     - 14 -