UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHECK POINT SOFTWARE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SRI INTERNATIONAL, INC., <br><br> Defendant. | Case No. 12-cv-03231-JSW   (MEJ) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. No. 94 |

The Court is in receipt of the parties' joint discovery dispute letter, filed January 16, 2014. Dkt. No. 94. The dispute concerns Defendant SRI International, Inc.'s objections and responses to Plaintiff Check Point Software Technologies, Inc.'s Requests for Production Nos. 4, 8-10, and 12, for which Check Point seeks documents relating to SRI's licensing negotiations and correspondence sent or received subsequent to 2004. Jt. Ltr. at 1. Check Point moves to compel SRI to produce all documents responsive to the identified requests for production, including documents relating to licensing negotiations that did not, or have not, resulted in a license agreement. *Id.* SRI's objections to Check Point's requests state: "License discussions that have yet to reach a resolution are not relevant to any issue in this case. SRI will produce documents relating to finalized license discussions for the patents-in-suit." *Id.* (quoting SRI's Dec. 14, 2012, Responses and Objections to RFPs 1-44).

Check Point argues that documents and correspondence relating to SRI's efforts to license the patents-in-suit are relevant and discoverable because they serve to shed light on material issues in this case, including valuation and scope of the alleged inventions. *Id.* Check Point contends that negotiations and offers to license that have not resulted in an agreement are relevant and probative of reasonable royalty and can help the accused infringer to ascertain the extent of its liability to the patent holder and to formulate an appropriate litigation strategy. *Id.* at 2.

1    SRI responds that it has produced its licenses to the patents-in-suit, about a half a dozen,
2    and its negotiation documents corresponding to its executed licenses. *Id.* at 3. Thus, SRI argues
3    that it has produced the only relevant licensing documents. *Id.* SRI further argues that, even
4    though ongoing negotiations that have yet to yield "royalties received" are irrelevant, and the
5    disclosure of which could be highly prejudicial due to the likelihood of interference with those
6    ongoing negotiations, SRI offered to compromise and produce those documents with additional
7    protections to mitigate significant prejudice to SRI. *Id.* Specifically, SRI has offered to produce
8    the requested documents if Check Point agrees to refrain from contacting those third parties about
9    the negotiations. *Id.* SRI states that Check Point "flatly refused, with no attempt to determine
10   whether its needs can be met while preventing prejudice to SRI." *Id.* SRI has now offered to
11   compromise and produce the requested documents with the following protective order:

> (1) Ongoing negotiation documents may be designated as Outside Counsel Only; (2) Documents designated as Outside Counsel Only, or information contained in those documents, may be disclosed to outside counsel but cannot be disclosed to employees at Check Point; (3) The identity of parties derived from Outside Counsel Only documents cannot be used to contact those parties about SRI, SRI's patents, or SRI's negotiations with those parties. Nothing prevents outside counsel from contacting those parties on matters unrelated to SRI, SRI's patents, or SRI's negotiations with those parties. Nothing prevents Check Point's counsel from contacting those parties for the purposes of discovery so long as the identity of the party is not disclosed to Check Point. Nothing prevents further contact with parties with whom outside counsel is already in regular contact; (4) Otherwise, Outside Counsel Only documents shall be treated the same as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

21   *Id.* at 4.
22       "A patentee is entitled to 'damages adequate to compensate for the infringement, but in no
23   event less than a reasonable royalty.'" *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
24   609 F.3d 1308, 1319 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284). "A reasonable royalty can be
25   calculated from an established royalty, the infringer's profit projections for infringing sales, or a
26   hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pac.*
27   *Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *Id.* (citing *Lucent*
28   *Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Minks v. Polaris Indus.*, 546 F.3d

1364, 1372 (Fed. Cir. 2008)).  Among the *Georgia-Pacific* factors are the following: "(1) [t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"; and "(2) [t]he rates paid by the licensee for the use of other patents comparable to the patent in suit."  *Georgia-Pac.*, 318 F. Supp. at 1120.

        Draft license agreements and proposals, depending on their comparability, may be relevant to determining a reasonable royalty.  *Unidisply S.A. v. Am. Elc. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (finding evidence of proposed license terms helpful for determining a reasonable royalty); *Sorenson v. Lexar Media, Inc.*, 2008 WL 5383513, at *2 (N.D. Cal. Dec. 22, 2008) ("The drafts, for example, could lead to the discovery of relevant evidence on the issue of what value should be placed on the patents-in-suit.  Even those drafts that did not lead to a fully executed licensing agreement could have relevance on the damages question of what constitutes a reasonable royalty."); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 100 (D.N.H. 1995) (Among the *Georgia-Pacific* factors "is the prior or existing royalties received by the patentee for the licensing of the patent in question.  Related to this factor is evidence of prior offers to license by the patentee) (citing Donald S. Chisum, 5 Patents § 20.03[3] (1994)).

        Here, the Court finds that documents and correspondence relating to SRI's efforts to license the patents-in-suit, including negotiations and offers to license that have not resulted in an agreement, are relevant because they will at a minimum assist in determining a reasonable royalty rate.  Accordingly, the Court GRANTS Check Point's motion to compel further responses to Requests for Production Nos. 4, 8-10, and 12.  However, said production shall be conditioned on the parties entering into an agreement to address SRI's concerns regarding contact with third-parties.  The parties shall meet and confer on this issue and thereafter file a stipulated protective order (or joint letter, if unable to agree on language).

**IT IS SO ORDERED.**

Dated: January 21, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

3